BINGHAM McCUTCHEN LLP
WILLIAM BATES III (SBN 63317)
JOHN D. PERNICK (SBN 155468)
KRISTEN A. PALUMBO (SBN 215857)
Three Embarcadero Center
San Francisco, California 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

Attorneys for Plaintiff
MERCHANT e-SOLUTIONS, INC., a Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCHANT e-SOLUTIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>COMMUNITY STATE BANK, a corporation and Wisconsin state chartered commercial bank, and DOES 1 TO 10,<br><br>Defendants. | No. C 07-06042 JSW<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER ACTION**<br><br>Date: February 22, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. Jeffrey S. White<br>Location: Courtroom 2, 17th Floor |

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. STATEMENT OF FACTS ..... 2

A. MeS and CSB Enter Into 2004 Direct Agreement ..... 2

B. MeS and CSB Execute 2005 Referral Agreement ..... 3

C. The Parties Continue to Operate Under 2004 Direct Agreement Despite Execution of 2005 Referral Agreement ..... 4

D. MeS Refuses to Reimburse MeS for Chargebacks ..... 4

E. MeS's Claims Against CSB ..... 5

III. DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER THIS ACTION TO WISCONSIN SHOULD BE DENIED ..... 6

IV. CSB'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED ..... 7

A. Standards on Motion to Dismiss ..... 7

B. The Complaint States a Claim for Breach of Contract ..... 8

C. The Complaint States A Claim for Declaratory Relief ..... 11

V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

Page

Cases

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) ..... 7

*Biren v. Equality Emergency Medical Group, Inc.*, 102 Cal.App.4th 125 (2002) ..... 9

*Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ..... 7

*Conley v. Gibson*, 355 U.S. 41 (1957) ..... 7

*Dallman Supply Co. v. Sweet*, 86 Cal.App.2d 780 (1948) ..... 11, 12

*Diamond Woodworks, Inc. v. Argonaut Ins. Co.*, 109 Cal.App.4th 1020 (2003) ..... 8, 9

*Frank T. Hickey, Inc. v. Los Angeles Jewish Community Council*, 128 Cal.App.2d 676 (1954) ..... 9

*Gaglione v. Coolidge*, 134 Cal.App.2d 518 (1955) ..... 11

*Garrison v. Edward Brown & Sons*, 25 Cal. 3d 473 (1944) ..... 9

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ..... 7

*Jackson v. Carey*, 353 F. 3d 750, 758 (9th Cir. 2003) ..... 7

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) ..... 7

*Loupias v. Rosen*, 102 Cal.App.2d 781 (1951) ..... 11

*Mier v. Owens*, 57 F.3d 747 (9th Cir. 1995) ..... 7, 10

*Murphy v. Schneider National, Inc.*, 362 F.3d 1133 (9th Cir. 2003) ..... 7

*Pacific Business Connections, Inc. v. St. Paul Surplus Lines Ins. Co.*, 150 Cal.App.4th 517 (2007) ..... 9

*Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663 (1953) ..... 6

*Ralphs Grocery Co. v. Amalgamated Meat Cutters & Butchers Workmen of N. Amer., Local No. 439*, 98 Cal.App.2d 539 (1950) ..... 12

*Sander v. Kennedy*, 794 F.2d 478 (9th Cir. 1986) ..... 7

*Wagner v. Glendale Adventist Medical Ctr.*, 216 Cal. App. 3d 1379 (1989) ..... 9

Statutes

28 U.S.C. § 1441(a) ..... 1, 6

Cal. Code of Civ. Proc. § 1060 ..... 5, 11

TABLE OF AUTHORITIES
(continued)

Page

Other Authorities

13 Richard A. Lord, Williston on Contracts § 39:14 (4th ed. 2000) ........................................... 9

1 Witkin, *Summary of California Law*, Contracts § 749 (10th ed. Supp. 2007) ........................... 8

Rules

Fed.R.Civ.P. 12(b)(3) ........................................................................................... 1, 6, 7

Fed.R.Civ.P. 12(b)(6) ........................................................................................... 1, 6, 7, 10

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Venue in this Court is proper. Under 28 U.S.C. § 1441(a), the proper venue in removed cases is the federal district court for the district where the state court action was pending. Because the Northern District is the district embracing San Francisco County, the place where this action was pending prior to removal by Community State Bank ("CSB"), the venue requirements of section 1441(a) are met. CSB's venue challenge is based on the forum selection clause in an agreement that does not apply to the claims that Merchant e-Solutions ("MeS") brings here. Because MeS's claims are based on and arise out of a different agreement, the forum selection clause upon with CSB relies is irrelevant and does not prevent MeS from pursuing its claims in this Court. CSB's Rule 12(b)(3) motion to dismiss or transfer based on improper venue should be rejected.

CSB's Rule 12(b)(6) motion to dismiss should similarly be denied. CSB's motion is based on an agreement that the parties never implemented. As alleged in the Complaint, CSB's course of conduct was (1) entirely inconsistent with the 2005 Referral Agreement and its new-found desire to enforce it and (2) entirely consistent with the 2004 Direct Agreement on which MeS's claims are based. CSB asks the Court to ignore MeS's allegations that the parties continued to operate under the 2004 Direct Agreement and, by their conduct, waived the provisions of the 2005 Referral Agreement on which CSB now relies. To the contrary, on this Motion to Dismiss, the Court must accept those allegations as true.

It is well-settled that the parties to a contract may, through their conduct, modify or waive their rights under the agreement. Here, MeS sufficiently alleges that CSB, through its conduct, modified or waived the provisions in the 2005 Referral Agreement upon which it relies, including the provisions in that Agreement that purport to terminate and supercede the 2004 Direct Agreement and eliminate any liability that CSB has under that agreement to reimburse MeS for chargebacks that it incurred on CSB's behalf. CSB does not even address MeS's allegations, except to deny them as a matter of fact by asserting that the parties "did not continue to operate" under the prior agreement. This is not the proper basis for a motion to dismiss. CSB's Rule 12(b)(6) motion should therefore be denied.

## II. STATEMENT OF FACTS

### A. MeS and CSB Enter Into 2004 Direct Agreement

On or about May 10, 2004, MeS and CSB entered into an Agent Bank Agreement - Direct Merchant Program with Cash Advances (the "2004 Direct Agreement"). Complaint, ¶ 6 & Ex. A. Under the 2004 Direct Agreement, CSB agreed (1) to enter into merchant agreements directly with its merchants to provide merchant credit card processing services; (2) to underwrite and approve each merchant; and (3) to bear the risk of merchant chargebacks[1] and fraud. *See* Complaint ¶ 6 & Ex. A (Direct Agreement) at §§ 2, 4, 8. Under the 2004 Direct Agreement, CSB "own[s] the Merchant account relationship," "accept[s] liability for merchant default," and agreed to immediately pay to MeS the amount of each charge arising from a cardholder's credit or debit transaction with a merchant that is charged back to MeS for any reason. Complaint, ¶ 7 & Ex. A at 1 (Recitals) and § 8.

MeS agreed to act solely as a service provider to CSB to facilitate merchant processing services by, for example, providing training for CSB staff covering application requirements and MeS's operational procedures, providing CSB with MeS's processing forms and supplies for merchants' use, providing account set-up, authorization, processing and settlement services for credit card and debit card transactions and statement servicing, returns and chargeback processing to merchants, providing customer call center services to CSB's merchants on behalf of CSB, and providing CSB with certain web-based reporting services. Complaint, ¶ 6(d) & Ex. A (Direct Agreement) at §§ 2, 4. In return, CSB agreed to pay MeS a processing fee for its services as set forth and defined in Schedule A to the 2004 Direct Agreement. Complaint, ¶ 6(e) & Ex. A (Direct Agreement) at §§ 2, 4, 6.

MeS began processing credit and debit card receipts from CSB's merchants under the Direct Agreement in or about May 2004. Complaint, ¶ 8.

---

[1] Chargebacks are returns of a charge to a merchant under operating rules established by card associations like Visa or Mastercard or through operation of consumer protection laws or other laws or regulations.

**B. MeS and CSB Execute 2005 Referral Agreement**

On or about May 19, 2005, MeS and CSB executed an "Agent Bank Agreement - Merchant Referral Program With Cash Advances" (the "2005 Referral Agreement"). Complaint ¶ 9 & Ex. B. CSB falsely suggests that the 2005 Referral Agreement simply altered material terms in the parties' ongoing credit card processing relationship and that, under the 2005 Referral Agreement, MeS would simply "continue to provide credit card processing services" to CSB. Motion at 3. Not so. The 2005 Referral Agreement, if implemented, would have fundamentally altered the nature of the relationship between CSB and MeS. However, it was never implemented.

The 2005 Referral Agreement would have changed the companies' relationship in three principal ways. First, while under the 2004 Direct Agreement, CSB owns the merchants and underwrites and enters into merchant agreement with them, under the 2005 Referral Agreement, CSB would make merchant processing services available to its merchants by referring those merchants to MeS,[2] and MeS would own the merchants and underwrite and enter into agreements with them to provide merchant processing services (provided that the merchants met the underwriting, credit criteria and other requirements of MeS). Complaint ¶ 9 & Ex. B (Referral Agreement) at §§ 2-4. Second, while under the 2004 Direct Agreement, CSB agreed to pay MeS a processing fee for each transaction, the 2005 Referral Agreement calls for MeS to pay CSB referral fees, including a one-time fee of $25.00 for every merchant accepted by MeS for processing services and 5 basis points on the net Visa and Mastercard sales transactions processed for the merchants referred to MeS by CSB. Complaint ¶ 9 & Ex. B (Referral Agreement) at § 6 & Sch. A. Third, unlike under the 2004 Direct Agreement, the 2005 Referral Agreement provides that MeS would not charge back to CSB any charge originated by a merchant that is charged back to MeS (because MeS, having entered into agreements directly

---

[2] Specifically, the 2005 Referral Agreement called for CSB to submit a referral form to MeS for each merchant, upon receipt of which MeS would obtain completed applications, application fees and other documentation from the merchants. Complaint ¶ 9 & Ex. B (Referral Agreement) at §§ 2-4.

with the merchants, would have the contractual right to collect those chargebacks from the merchants). Complaint ¶ 9 & Ex. B (Referral Agreement) at § 8.

**C. The Parties Continue to Operate Under 2004 Direct Agreement Despite Execution of 2005 Referral Agreement**

While the 2005 Referral Agreement provided that any existing agreement regarding transaction processing between MeS and CSB would be deemed terminated on the effective date of the Referral Agreement and would be deemed superseded by the Referral Agreement (Complaint, ¶ 9 & Ex. B at § 24), the parties never implemented the new referral relationship. Complaint, ¶ 10. Indeed, despite execution of the Referral Agreement, the parties continued to operate under the 2004 Direct Agreement. *Id.* CSB did not refer any merchants to MeS under the Referral Agreement, no merchants entered into agreements with MeS under the Referral Agreement, and no referral fees were ever paid by MeS to CSB under the Referral Agreement. *Id.* Rather, CSB continued to enter into agreements directly with its merchants and all merchant accounts were processed and sent to MeS under the terms of the Direct Agreement and pursuant to the Direct Agreement procedures. *Id.* MeS continued to collect its processing fee and to remit the difference between the amount of the merchants' sales transactions and the processing fee to CSB pursuant to the terms of the Direct Agreement, and CSB continued to accept these payments.[3] *Id.*

**D. MeS Refuses to Reimburse MeS for Chargebacks**

Between January 2007 and April 2007, MeS advanced $167,106.52 for merchant chargebacks incurred by three of CSB's merchants. Complaint, ¶ 11. These merchants were processed by the parties under the Direct Agreement and the remittances to CSB for the three merchants at issue were made in conformance with the pricing provisions under the Direct Agreement. *Id.* None of the merchants were referred to MeS under the Referral Agreement, and

---

[3] This resulted in the remittance by MeS to CSB of substantial amounts more than would have been paid to CSB under the Referral Agreement.

thus none of the merchants entered into an agreement with MeS for merchant processing services pursuant to the Referral Agreement. *Id.*

Pursuant to the terms of the Direct Agreement, MeS requested reimbursement from CSB for these merchant chargebacks. Complaint, ¶ 12. CSB has failed and refused to reimburse MeS for the merchant chargeback losses. *Id.*, ¶ 13. CSB has taken the position that, contrary to MeS's position that CSB is liable to MeS for the chargebacks under the Direct Agreement, the Referral Agreement eliminated that liability. *Id*.

**E. MeS's Claims Against CSB**

On October 30, 2007, MeS filed a Complaint for Declaratory Relief and Breach of Contract against CSB in San Francisco Superior Court. With respect to its declaratory relief claim, MeS alleges that an actual controversy has arisen and now exists between MeS and CSB concerning their respective contractual rights and duties in that: (a) MeS contends that the 2004 Direct Agreement is the operative agreement between the parties, that under the 2004 Direct Agreement CSB bears the risk of merchant chargebacks and is obligated to immediately reimburse MeS the amount of chargebacks it has advanced to CSB's merchants and incurred on CSB's behalf; whereas (b) CSB contends that the 2005 Referral Agreement is the operative agreement between the parties and, under the 2005 Referral Agreement, CSB is not liable to MeS for any merchant chargeback losses. Complaint, ¶ 15. MeS seeks a declaration, pursuant to California Code of Civil Procedure Section 1060, that the 2004 Direct Agreement is the operative agreement between the parties and that the 2005 Referral Agreement does not control as to the merchants and chargebacks at issue or that the 2005 Referral Agreement is void and of no effect, and that CSB is obligated to reimburse MeS for the merchant chargeback losses MeS has advanced to CSB's merchants and incurred on CSB's behalf. *Id.*, ¶ 16.

MeS's breach of contract claim is based on a breach of the 2004 Direct Agreement and alleges that CSB breached that Agreement by failing and refusing to bear the risk of merchant chargebacks and fraud and to pay the $167,106 advanced by MeS for merchant chargebacks incurred by three of CSB's merchants, as required by Sections 2, 4 and 8 of the Direct Agreement. *Id.*, ¶¶ 20-22.

On November 29, 2007, CSB removed the case to this Court. CSB now moves to dismiss under Rule 12(b)(3) for improper venue or, alternatively to transfer this action to Wisconsin, and under Rule 12(b)(6) for failure to state a claim.

## III. DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER THIS ACTION TO WISCONSIN SHOULD BE DENIED

CSB's objection to this Court as the proper venue is without merit. Venue in removed cases is governed solely by 28 U.S.C. § 1441(a). *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953). Section 1441(a) provides that in actions removed from state court, venue is proper in the federal district court for the district and division where the state court action was pending. *See* 28 U.S.C. § 1441(a); *Polizzi*, 345 U.S. at 665-66. Here, MeS initially filed this action in San Francisco County Superior Court, and CSB removed it to this Court, which is the district court for the district and in the division where the state action was pending. The venue requirements of section 1441(a) are therefore satisfied.

CSB argues that venue is not proper because the 2005 Referral Agreement contains a provision requiring MeS to bring actions "commenced pursuant to or arising out of" the 2005 Referral Agreement in the "state or federal courts located in the State of [CSB's] principal place of business" (Wisconsin). Motion at 4 (quoting Referral Agreement, § 21). But this action is not commenced "pursuant to" and does not "aris[e] out of" the 2005 Referral Agreement. It is brought pursuant to and arises out of the 2004 Direct Agreement, which contains no forum selection clause or exclusive venue provision. MeS's breach of contract action claim alleges a breach of the 2004 Direct Agreement and thus indisputably arises solely out of that Agreement. MeS's declaratory relief claim similarly is brought pursuant to and arises out of the 2004 Direct Agreement. MeS seeks a declaration that the 2004 Direct Agreement is the operative agreement between the parties and that CSB is obligated, under the 2004 Direct Agreement, to reimburse MeS for the merchant chargeback losses MeS has advanced to CSB's merchants and incurred on CSB's behalf. Thus, the forum selection clause in the 2005 Referral Agreement is irrelevant and does not preclude MeS from pursuing this action in this Court.

Indeed, the whole point of MeS's declaratory relief claim is that the 2005 Referral Agreement was never implemented, does not control, and that CSB by its conduct modified and/or waived the venue, termination and chargeback provisions in the 2005 Referral Agreement upon which CSB now attempts to rely. While CSB asserts that "the parties did not operate under" the 2004 Direct Agreement (Motion at 6), the Complaint alleges ample facts of the parties' conduct to the contrary. This Court must, on this Rule 12(b)(3) motion, "draw all reasonable inferences in favor of [MeS] and resolve all factual conflicts in favor of [MeS]." *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2003).

For all these reasons, the venue provision in the 2005 Referral Agreement is irrelevant and CSB's motion to dismiss or transfer this case to Wisconsin should be denied.

## IV. CSB'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED

### A. Standards on Motion to Dismiss

A motion to dismiss for failure to state a claim "is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). When ruling on a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, must accept all factual allegations pleaded in the complaint as true, and must draw all reasonable inferences from those allegations in favor of the plaintiff. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995); *Sander v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The motion "may not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Further, dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F. 3d 750, 758 (9th Cir. 2003).

**B. The Complaint States a Claim for Breach of Contract**

CSB has not established, as it must, that MeS can prove no set of facts to support its breach of contract action. CSB's motion to dismiss is based entirely on a provision in the 2005 Referral Agreement that states that "if there is an existing agreement regarding transaction processing between MeS and [CSB], that existing agreement will be deemed terminated on the effective date of this Agreement and be deemed superceded by this Agreement in all respects." Motion at 5. According to CSB, the effect of this provision is that "[a]s of May 19, 2005, the parties did not operate under" the 2004 Direct Agreement (which requires CSB to accept the risk of merchant chargebacks), and thus, as a matter of law, MeS's breach of contract claims must fail because it is "premised on the 2004 [Direct] Agreement that was no longer in effect as of May 19, 2005, and therefore has no applicability to the events occurring in 2007 that form the subject matter of MeS's action." Motion at 6.

The problem with CSB's theory is that it ignores entirely the allegations in MeS's complaint regarding course of conduct of the parties subsequent to the execution of the 2005 Referral Agreement (allegations which must be taken as true) as well as the effect, under California law, of that conduct on CSB's ability to rely on or enforce the 2005 Referral Agreement.

California courts have long recognized that parties to a contract may modify or waive their rights under that contract through conduct inconsistent with the terms of the written agreement. *See* 1 Witkin, *Summary of California Law*, Contracts § 749 (10th ed. Supp. 2007) ("Where it is unreasonable to interpret the contract in accordance with the course of performance, the conduct of the parties may be evidence of an agreed modification or of a waiver by one party.") (quoting Restatement 2d, Contracts, § 202, cmt. g). For example, in *Diamond Woodworks, Inc. v. Argonaut Ins. Co.*, 109 Cal.App.4th 1020 (2003), a contractor and an employee leasing company had a contract that provided that a new employee would only become an employee of the leasing company after the contractor had submitted an employment approval package. But the companies never followed that procedure and, instead, conducted themselves as if new employees hired by the contractor became employees of the leasing

company immediately. When an employee was injured on his first day of work, the leasing company and its insurer argued that, under the terms of the written agreement, the injured worker was not an employee of the leasing company. The court rejected that argument:

> In short, the parties to the contract not only abandoned or ignored those provisions dealing with the processing of new employees, but, postagreement, substituted a course of conduct wholly incompatible with those provisions. This is a textbook case of modification by conduct. As our Supreme Court has held, where the subsequent conduct of the parties is inconsistent with and clearly contrary to the provisions of the written agreement, the parties' modification setting aside the written provisions will be implied.

*Id*. at 1038 (citing *Garrison v. Edward Brown & Sons*, 25 Cal. 3d 473, 479 (1944)). *See also Pacific Business Connections, Inc. v. St. Paul Surplus Lines Ins. Co.*, 150 Cal.App.4th 517, 525 (2007) (written agreement provision can be waived by conduct so inconsistent with intent to enforce provision as to induce reasonable belief that right to enforce has been relinquished); 13 Richard A. Lord, Williston on Contracts § 39:14 (4th ed. 2000) (waiver of contract rights may be express or implied through conduct). Indeed, to do otherwise would be inequitable. "In that circumstance, it would be equally inequitable to deny the relying party the benefit of the other party's apparent modification of the written contract." *Wagner v. Glendale Adventist Medical Ctr.*, 216 Cal. App. 3d 1379, 1388 (1989).[4]

Here, the facts alleged in the Complaint, if proven, support a finding that CSB by its conduct modified and/or waived the terms of the 2005 Referral Agreement and is estopped from enforcing the provisions that purportedly terminated or superseded the 2004 Direct Agreement. MeS alleges that, despite execution of the Referral Agreement, the parties continued to operate under the 2004 Direct Agreement. Complaint, ¶ 10. In the over two years since the execution of the 2005 Referral Agreement, CSB did not refer any merchants to MeS under the Referral Agreement, no merchants entered into agreements with MeS under the Referral

---

[4] Contrary to CSB's contention (*see* Motion at 6), the presence of a contract provision excluding modifications except by signed writing does not prevent parties from waiving that provision by conduct, as is alleged here, antithetical to that term. *See, e.g., Frank T. Hickey, Inc. v. Los Angeles Jewish Community Council*, 128 Cal.App.2d 676, 680, 682-83 (1954); *Biren v. Equality Emergency Medical Group, Inc.*, 102 Cal.App.4th 125, 141 (2002).

Agreement, and no referral fees were ever paid by MeS to CSB under the Referral Agreement. *Id.* Rather, CSB continued to enter into agreements directly with its merchants and all merchant accounts were processed and sent to MeS under the terms of the Direct Agreement and pursuant to the Direct Agreement procedures. *Id.* MeS continued to collect its processing fee and to remit the difference between the amount of the merchants' sales transactions and the processing fee to CSB pursuant to the terms of the Direct Agreement, and CSB continued to make and accept these payments. *Id.*

With respect specifically to three merchant chargebacks at issue in this case, MeS alleges that all three merchants were processed by the parties under the Direct Agreement and the remittances to CSB for the three merchants were made in conformance with the pricing provisions under the Direct Agreement. *Id.*, ¶ 11. None of the merchants were referred to MeS under the Referral Agreement, and thus none of the merchants entered into an agreement with MeS for merchant processing services pursuant to the Referral Agreement. *Id.* Rather, MeS alleges that they entered into agreements with CSB, pursuant to the terms of the Direct Agreement. *Id.*, ¶¶ 10-11. CSB does not and, on a motion to dismiss cannot, dispute any of these allegations.

Viewing these allegations in a light most favorable to and taking all reasonable inference in favor of MeS, this course of conduct, if proven, is more than sufficient to support a finding of waiver or modification by conduct. CSB's conduct is entirely inconsistent with a claim to that the 2005 Referral Agreement controls and that the 2004 Direct Agreement was terminated or superceded by the Referral Agreement -- conduct which induced a reasonable belief on the part of MeS that CSB's right to rely on that Agreement had been relinquished. CSB's implicit argument that its alleged conduct does not matter and that the termination provision in the 2005 Referral Agreement is the only relevant fact is wrong as a matter of law. CSB's factual assertion that "the parties did not operate under" the 2004 Direct Agreement, and thus that the factual allegations in the Complaint are false, is not a proper basis for a Rule 12(b)(6) motion to dismiss. *See Mier*, 57 F.3d at 750 (on motion to dismiss, Court must accept

allegations as true and draw all reasonable inferences from those allegations in favor of plaintiff). For these reasons, CSB's motion to dismiss MeS's breach of contract claim fails.

**C. The Complaint States A Claim for Declaratory Relief**

CSB's motion to dismiss MeS's declaratory relief claim is similarly without merit. A complaint states a cause of action for declaratory relief under California Code of Civil Procedure Section 1060 if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties and requests that these rights and duties be adjudged by the court. *Gaglione v. Coolidge*, 134 Cal.App.2d 518, 521 (1955); *Dallman Supply Co. v. Sweet*, 86 Cal.App.2d 780, 783 (1948). MeS's Complaint amply satisfies these requirements.

The facts alleged in the Complaint show the existence of an actual controversy between MeS and CSB concerning their respective contractual rights in that: (a) MeS contends that the Direct Agreement is the operative agreement between the parties and that CSB is obligated to immediately reimburse MeS the amount of chargebacks it has advanced to CSB's merchants and incurred on CSB's behalf; whereas (b) CSB contends that the Referral Agreement is the operative agreement between the parties and that CSB is not liable to MeS for any merchant chargeback losses. Complaint, ¶ 15. MeS seeks a declaration from the Court that the Direct Agreement is the operative agreement between the parties and that the Referral Agreement does not control as to the merchants and chargebacks at issue or that the Referral Agreement is void and of no effect, and that CSB is obligated to reimburse MeS for the merchant chargeback losses MeS has advanced to CSB's merchants and incurred on CSB's behalf. *Id.*, ¶ 16. Viewing these allegations in the light most favorable to MeS, the Complaint alleges facts that support the existence of a dispute between MeS and CSB regarding their contractual obligations to one another. Indeed, CSB does not deny the existence of an actual controversy between the parties or that MeS has requested the Court adjudge the parties' respective rights and duties.

Rather, CSB asserts only that the position MeS has taken is wrong and should be rejected by the Court. That is not the proper inquiry on a motion to dismiss and is insufficient to

defeat, at the motion to dismiss stage, a claim for declaratory relief. *See Loupias v. Rosen*, 102 Cal.App.2d 781, 784 (1951) ("A complaint for declaratory relief does not need to plead facts showing plaintiff is entitled to relief" and plaintiff not required to "allege facts entitling him to a favorable declaration"); *Dallman Supply Co.*, 86 Cal.App.2d at 783 (holding that "[w]hat may be the ultimate result after trial on the merits of alleged controversy is immaterial" l in determining whether complaint states a cause of action for declaratory relief); *Ralphs Grocery Co. v. Amalgamated Meat Cutters & Butchers Workmen of N. Amer., Local No. 439*, 98 Cal.App.2d 539, 542-43 (1950) (holding that it is not essential that thesis of plaintiff be adopted by court in order for the plaintiff to be entitled to trial and decree). Thus, CSB's motion to dismiss MeS's declaratory relief claim must fail.

## V. CONCLUSION

For the foregoing reasons, CSB's motion to dismiss or, in the alternative, to transfer this action should be denied. In the event that the Court is inclined to grant the motion, MeS requests leave to amend the Complaint.

DATED: February 1, 2008

BINGHAM McCUTCHEN, LLP

By: /s/ Kristen A. Palumbo
Kristen A. Palumbo
Attorneys for Plaintiff
MERCHANT e-SOLUTIONS, INC.